**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Shenzhen Dejiayun Network
Technology Co., Ltd., a Chinese
Corporation

        Plaintiff,

          v.

The Partnerships And
Unincorporated Associations
Identified On Schedule "A"

        Defendants.

Case No. 1:22-cv-22363

Judge  Robert N. Scola, Jr.

---

### PLAINTIFF'S MOTION FOR ENTRY OF FINAL JUDGMENT BY DEFAULT AS TO CERTAIN DEFENDANTS AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 55(b) and 58(d) of the Federal Rules of Civil Procedure, Plaintiff Shenzhen Dejiayun Network Technology Co., Ltd.  ("Plaintiff" or "Dejaiyun"), by and through its undersigned counsel, respectfully moves the Court for an entry of default judgment in favor of Plaintiff and against the Defendants identified on Schedule "A" to the Complaint numbered 1-20 ("Defaulting Defendants"). Default has been entered against Defaulting Defendants by the Clerk of Court for failure to answer or otherwise defend the instant suit on November 15, 2022. (D.E. 49). Because there are no allegations of joint liability or possibility of inconsistent liability between the Defaulting Defendants, Plaintiff now moves for entry of a final default judgment.

### MEMORANDUM OF LAW

### I.    PLAINTIFF'S RIGHTS

Plaintiff is the owner of the federally registered BAGILAANOE trademark, which is covered by U.S. Trademark Registration No. 5,745,285. ("BAGILAANOE Mark" or

"BAGILAANOE" hereinafter) (D.E. 1 at ¶ 3, D.E. 18-1 at ¶3, D.E. 18-2). Since September 25, 2018, Plaintiff has utilized the BAGILAANOE trademark in the business of manufacturing and distributing clothing items through e-commerce platforms. (D.E. 1 at ¶ 7, D.E. 18-1 at ¶¶ 3, 8, 10). Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the BAGILAANOE Mark. (D.E. 1 at ¶¶ 8, 14). Plaintiff has extensively used, advertised, and promoted the BAGILAANOE Mark in the United States and elsewhere with its goods, and has carefully monitored and policed the use of the BAGILAANOE Mark. (D.E. 18-1 at ¶¶ 8, 9). As a result of Plaintiff's efforts, the BAGILAANOE Mark has grown into a successful and recognized brand for clothing items. (D.E. 18-1 at ¶ 9).

The BAGILAANOE Mark is a symbol of the brand's quality, reputation, and goodwill and has never been abandoned. (*See* D.E. 18-1 at ¶¶ 6, 7). The BAGILAANOE Mark is distinctive, signifying to the purchaser that the products come from and/or are approved by Plaintiff. (D.E. 18-1 at ¶ 9). Plaintiff is, and at all times relevant hereto, has been the owner of all rights in and to the BAGILAANOE Mark. (D.E. 18-1 at ¶ 3). The BAGILAANOE Mark has never been assigned or licensed to any of the Defendants in this matter. (D.E. 1 at ¶ 12, D.E. 18-1 at ¶ 9).

## II.    DEFENDANTS' INFRINGING ACTS

As alleged by Plaintiff, established by the evidence presented herein and admitted by default, Defaulting Defendants own, operate, or control the interactive, commercial Internet websites and supporting domains operating under the domain names identified on Schedule "A" hereto (the "Subject Domain names"). Thus, Defaulting Defendants are the active, conscious, and dominant forces behind the promotion, advertisement, distribution, offering for sale, and/or sale of goods bearing and/or using the BAGILAANOE Mark. (D.E. 1 at ¶¶ 15, 16; D.E. 18-1 at ¶

12; D.E. 18-4; D.E. 18-6 at ¶ 19). Further, as admitted by Defaulting Defendants through default, at all times relevant, Defaulting Defendants have had full knowledge of Plaintiff's ownership of the BAGILAANOE Mark, including its exclusive right to use and license the BAGILAANOE Mark  and the goodwill associated therewith. (D.E. 1 at ¶ 34). Defaulting Defendants do not have, nor have they ever had, the right or authority to use the BAGILAANOE Mark for any purpose. (D.E. 18-1 at ¶ 14). Yet, the Defaulting Defendants engaged in the activity of advertising, offering for sale, selling, and distributing their goods bearing and/or using the BAGILAANOE Mark via their Internet websites operating under the Subject Domain Names. (D.E. 18-1 at ¶ 14; D.E. 18-4).

Plaintiff's evidence, obtained as a result of its investigation of Defaulting Defendants, clearly demonstrates that the Defaulting Defendants are engaged in the fraudulent promotion, advertisement, distribution, offering for sale, and sale of goods bearing and/or using counterfeits and/or infringements of the BAGILAANOE Mark. (D.E. 18-1 at ¶ 14, D.E. 18-4). Representative for Plaintiff Deng Jialiang personally reviewed and visually inspected Defaulting Defendants' websites, including web page captures reflecting various products on retail stores being offered for sale utilizing the BAGILAANOE Mark on the Defaulting Defendant's e-commerce stores operating under the Subject Domain names.  (D.E. 18-1 at ¶ 14; D.E. 18-4). Following his investigation, he concluded the clothing items and Defaulting Defendants' e-commerce stores offered for sale and distribution are non-genuine, unauthorized versions of BAGILAANOE products. (D.E. 18-1 at ¶¶ 13-16; D.E. 18-3, D.E. 18-4).

## III.    PROCEDURAL BACKGROUND

Plaintiff filed its Complaint on July 28, 2022 in order to combat the willful and intentional counterfeiting and false designation of origin by the Defendants who marketed,

offered for sale, and advertised with its federally registered BAGILAANOE Mark. (D.E. 1 at ¶ 3, D.E. 18-1). On September 14, 2022, in order to facilitate the investigation of its claims and the identity and location of Defendants, Plaintiff moved for an order permitting expedited discovery and a temporary restraining order. (D.E.  18, 19). On September 16, the Court granted both motions. (D.E.  21, 23). On September 22, 2022, Plaintiff filed its *Ex Parte* Application to Extend Temporary Restraining Order. (D.E.  24). On September 23, 2022, this Court granted Plaintiff's motion for extension of a temporary restraining order for fourteen additional days, expiring on October 14, 2022. (D.E.  25).

On October 15, Plaintiff served Defendants with the Summons, Complaint, and Schedule A. (D.E. 44). Consistent with this Court's order Authorizing Electronic Service of Process (DE 22), Defendants were additionally noticed to the website postings appearing at the URL https://fordbanister.com/case-no-22-cv-22363-rns-shenzhen-dejiayun/. (D.E. 44). On October 13, 2022, Plaintiff filed its Motion for Preliminary Injunction. (D.E. 27). On October 18, 2022, Plaintiff served Defendants with the Preliminary Injunction and the corresponding notice of hearing. (D.E. 37). This Court granted Plaintiff's Motion for Preliminary Injunction on November 2, 2022. (D.E.  47).

The time allowed for Defendants to respond to the Complaint has expired. (Declaration of L. Pittaway at ¶ 8, attached hereto as Exh. 1). Defaulting Defendants have not been granted an extension of time to respond, nor have they served or filed an Answer or other response. (Exh. 1 at ¶ 9). To Plaintiff's knowledge, none of the Defaulting Defendants are infants or incompetent persons, and upon information and belief, the Servicemembers Civil Relief Act does not apply. (Exh. 1 at ¶ 10). On November 14, Plaintiff filed its Motion for Clerk's Entry of Default against Certain Defendants (DE 48). On November 15, the Clerk entered default against Certain

Defendants for their failure to appear, answer or otherwise plead to the Complaint within the time required. (DE 49). Now that the Certain Defendants are in default, Plaintiff moves this Court for final default judgment against those defendants.

## II.     ARGUMENT

### A.     Default Judgment Should be Entered Against Defaulting Defendants

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a) – (b) and 28 U.S.C. § 1331. (D.E. 1 at ¶ 1). This Court has personal jurisdiction over Defendants and venue is proper under 28 U.S.C. § 1391, as Defendants have directed their infringing activities toward consumers within this district through the use of interactive, commercial e-commerce websites and supporting domains operating under the Subject Domain Names. (D.E. 1 at ¶¶ 2, 4, 5).

### 1.     Default Judgment is Proper

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint because a "defendant, by his default, admits the Plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established". *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F. 3d 1298, 1307 (11th Cir. 2009) (quoting *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975)); *see also See PetMed Express, Inc. v. Medpets.com*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (citing *Buchanan v. Bowman*, 820 F.2d 359 (11th Cir. 1987)). Therefore Defaulting Defendants are deemed to have admitted all of Shenzhen Dejiayun's sufficiently pled allegations in the Complaint.

In the instant case, the Complaint (D.E. 1), pleadings, the Supplemental Declaration of Deng Jialiang (D.E. 18-1) and the Declaration of L. Pittaway attached hereto clearly demonstrate

that default judgment pursuant to Rule 55, Federal Rules of Civil Procedure, should be entered against Defaulting Defendants.

      **2.     Factual Allegations Establish Defaulting Defendants' Liability**

Count One of the Complaint (D.E. 1) alleges that Defaulting Defendants infringed on Plaintiff's federally registered trademark in violation of 15 U.S.C. § 1114. The statutory language provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." *Id*. Courts have interpreted this language to require that a plaintiff demonstrate a successful trademark infringement claim under Section 32 of the Lanham Act by establishing that: (1) a plaintiff had prior rights to the trademarks at issue, and (2) the defendants adopted a mark or name that was the same, or confusingly similar to the plaintiff's mark, such that consumers were likely to confuse the two. *Planetary Motion, Inc. v. Techsplosion, Inc*., 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc*., 106 F.3d 355, 360 (11th Cir. 1997)).

Count Two of the Complaint alleges that Defaulting Defendants violated Section 43(a) of the Lanham Act for false designation of origin. The statutory language provides that Plaintiff must prove that Defaulting Defendants used Plaintiff's Mark "in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, which is likely to deceive as to the affiliation, connection, or association" of Defaulting Defendants with Plaintiff, or as to the origin, sponsorship, or approval, of Defaulting Defendants' goods by Plaintiff. 15 U.S.C. § 1125(a)(1). As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) is

"whether the public is likely to be deceived or confused by the similarity of the marks at issue." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S. Ct. 2753, 2763 (1992).

The sufficiently-pled facts provided in the Complaint (D.E. 1) through Paragraphs 7-8, 12, 15, 19, 34, 37-40, and 44-46 properly allege the elements for each of the above causes of action. Moreover, supporting evidence in the form of exhibits and the Declarations of Deng Jialiang and Lydia Pittaway substantiates the allegations of fact so that this Court may conclude that Defaulting Defendants are liable for trademark infringement and false designation of origin as pled. Accordingly, Default Judgment under Fed.R.Civ.P. 55 should be entered against each of the Defaulting Defendants.

### B.    Plaintiff is Entitled to Relief

### 1.    Entry of a Permanent Injunction is Appropriate

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Even under statutory default procedure, the equitable relief of a permanent injunction is available. *See, e.g., PetMed Express, Inc.*, 336 F. Supp. 2d at 1222-23. Defaulting Defendants' failure to respond or otherwise appear in this action makes it difficult, or impossible, for Plaintiff to mitigate or prevent future harm without this Court's entry of a permanent injunction.

Permanent injunctive relief is appropriate where a plaintiff demonstrates (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). By virtue of this Court's entry of an order granting Plaintiff's Motion for Entry of Temporary Restraining Order and Motion for Preliminary injunction, Plaintiff has met its burden as to each of the four factors in the test for permanent injunctive relief.

The issuance of a permanent injunction in this case is within the public's interest where a permanent injunction will prevent further harm to Plaintiff and the goodwill of the BAGILAANOE Mark and also protect consumers from being deceived or misled by Defaulting Defendants' unauthorized use of the BAGILAANOE Mark. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla., J. Cecilia Altonaga, 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior." (citation omitted)). Defaulting Defendants' pleadings, along with the evidence provided, establish that Defaulting Defendants offer to sell, advertise, market and display the BAGILAANOE Mark on their e-commerce stores to sell counterfeit clothing items. (D.E. 18-1, 18-4, 18-5).

In trademark cases, "a sufficiently strong showing of likelihood of confusion ... may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998). Plaintiff has demonstrated the harm and injury as a result of Defaulting Defendants' infringing activities, and will continue to suffer irreparable injury unless the Defaulting Defendants are permanently enjoined from continued infringement. (D.E. 18-1 at ¶¶ 16, 24-28). So long as Defaulting Defendants continue to use the

BAGILAANOE Mark in connection with the operation of the Subject Domain Names, Plaintiff will have no control over the goodwill of the BAGILAANOE Mark and thus will continue to incur damage and harm beyond that which a monetary damage alone may cure. (D.E. 18-1 at ¶¶ 26-28). In comparison, should this Court permanently enjoin Defaulting Defendants from their continued infringing conduct, Defaulting Defendants would have no cognizable hardship. After all, a permanent injunction would only prohibit them from engaging in what is illegal activity in the first place.

Finally, the public has an interest in the entry of a permanent injunction so that the Defaulting Defendants may not continue to engage in activity which may be misleading to potential consumers. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior." (alteration added) (citation omitted)); *BellSouth Adver. & and Publ'g. Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991) (holding "[i]n a trademark infringement or unfair competition case, a third party, the consuming public is present and its interests are paramount."). After all, Defaulting Defendants are offering to sell, advertising and marketing to a vast global market. *See Monster Energy Company v. Jing, et al.*, Case No. 2015-cv-00277 at * 7 (N.D. Ill. July 6, 2015) ("The internet platform defendants used, AliExpress.com, is a busy website that provides the potential to reach a vast customer base."); *Luxottica Group S.p.A. v. Hao Li, et al.*, Case No. 16-cv-00487 at *16 (N.D. Ill., J. Manish Shah, Feb. 15, 2017) ("But even putting aside any evidence of defendant selling multiple products through multiple online sales platforms, defendant can reach a worldwide customer base on eBay alone.").

This Court's powers of equity are sufficiently broad to enter a permanent injunction and prevent the Defaulting Defendants from being free to continue or resume their infringing activities using the Subject Domain Names. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15, 91 S. Ct. 1267, 1276 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for. . . the essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

### C. Damages as to Count I for Trademark Counterfeit and Infringing

Congress enacted a statutory damages remedy in trademark counterfeiting cases for the purpose of strengthening "the hand of businesses harmed by counterfeiters by updating existing statutes and providing stronger civil penalties against counterfeiters, including civil fines tied to the value of genuine goods and statutory damage awards of up to $1,000,000 per mark." S. REP. NO. 104-177, pt. I (1995). This bill permitted statutory damages because evidence of a defendant's profits in cases, such as Plaintiff's, are almost impossible to ascertain. *See, e.g.*, S. REP. NO. 104-177, pt. V(7) (1995)[1]. In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is

---

[1] "The committee recognizes that under current law, a civil litigant may not be able to prove actual damages if a sophisticated, large-scale counterfeiter has hidden or destroyed information about his counterfeiting. Moreover, counterfeiters' records are frequently nonexistent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in, making proving actual damages in these cases extremely difficult if not impossible. Enabling trademark owners to elect statutory damages is both necessary and appropriate in light of the deception routinely practiced by counterfeiters. The amounts are appropriate given the extent of damage done to business goodwill by infringement of trademarks." S. REP. NO. 104-177, pt. V(7) (1995)

rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark, per type of good. 15 U.S.C. § 1117(c)(1).  If the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark, per type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Dejiayun elects to recover an award of statutory damages as to Count I of the Complaint.

District courts  have a wide discretion to set an amount of statutory damages. *PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990). Therefore, even where a plaintiff may not be able to provide actual damages as a result of a defendant's infringement, an award of statutory damages is an appropriate remedy. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."); *see also PetMed Express, Inc*., 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure").

The availability of statutory damages is necessary not only where damage may be ongoing as the result of a loss of the trademark's goodwill, but also where a plaintiff may not have the ability to control and obtain information related to sales data. Indeed, where there is a lack of the discovery process and the inability to obtain information regarding defendants' sales and profits, statutory damages may be particularly appropriate. Defendants in default who failed to appear and refused to respond to a lawsuit should not be able to shield themselves from damages by virtue of what may be avoidance or contempt of the judicial system.

In the instant case, Deng Jialiang explained his investigation into how Defaulting Defendants have offered for sale, marketed, and advertised counterfeit BAGILAANOE products

at significantly reduced prices. (*See* D.E. 18-1 at 4, 18-5). Furthermore, Deng Jialiang explains why and how the future and ongoing damage to BAGILAANOE is immeasurable. Upon review of the customer complaints of the infringing products, he determined that "[m]any customers left reviews negative of both the products and the lack of customer service. Thus, these customers obtained products which they believed had come from Plaintiff and would come with the quality and service commensurate with authentic BAGILAANOE products." (D.E. 18-1 at 4). The damage to BAGILAANOE remains ongoing after the instant suit is closed because "counterfeiters and/or infringers take away Plaintiff's ability to control the nature and quality of BAGILAANOE Products. Loss of quality control over goods bearing and/or sold under the BAGILAANOE trademark and, in turn, loss of control over Plaintiff's reputation, is neither calculable nor precisely compensable." (DE 18-1 at 7). Thus, Plaintiff has established that the Defaulting Defendants have caused immeasurable damages to BAGILAANOE as a result of the erosion to BAGILAANOE's goodwill.

"In its broad discretion for determining statutory damages, the district court should consider both the willfulness of the defendant's conduct and the deterrent value of the sanction imposed." *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 852 (11th Cir. 1990). A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" to a plaintiff's intellectual property rights. *See Arista Records, Inc. v. Beker Enter., Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). Willfulness may also be inferred from the defendant's default. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1217 (upon default, well plead allegations taken as true). In either case, a defendant is deemed to have the requisite knowledge that its acts constitute an infringement.

In the instant case, Plaintiff has established that the BAGILAANOE Mark is a successful and recognized trademark for clothing items sold on the e-commerce site walmart.com. (D.E. 18-1 at 3). As displayed in the evidence reviewed by Deng Jialiang, and as filed with this Court, Defaulting Defendants likewise chose walmart.com to market, advertise, and offer to sell items under the "BAGILAANOE" brand which appear very similar to authentic BAGILAANOE products. (D.E.  18-1 at ¶¶ 3, 8-9, D.E.  18-4). However, Deng Jialiang was able to determine that the products were not authentic because Plaintiff does not have any assignment or license agreement with the Defaulting Defendants and because the listings did not indicate that the products were re-listed or re-sold. (D.E. 8-1 at ¶¶ 12-16, D.E. 9). In addition, the prices and significant inventory of sizes and colors to choose from erode any likelihood that the products sold by Defaulting Defendants are authentic BAGILAANOE products. (D.E.  18-1 at 8-9, D.E. 18-5). It is simply not plausible that Defaulting Defendants are able to sell BAGILAANOE products at the price point and in the inventory offered for sale.

Significantly, Defaulting Defendants are familiar enough with the BAGILAANOE Mark to choose the same e-commerce platform as Plaintiff and offer similar inventory at significantly reduced prices. Defaulting Defendants must have anticipated that consumers would be confused by their webpages and misled into purchasing the Defaulting Defendants' cheap counterfeit products. Thus, Defaulting Defendants intended on enriching themselves from the consumer base and long-standing goodwill of BAGILAANOE that Plaintiff worked so hard to build. Plaintiff respectfully submits to this Court that willfulness may be inferred from this set of facts.

Plaintiff respectfully requests for this Court to award the statutory award of damages in the amount of $200,000 against each Defaulting Defendant. This amount is within the permissible statutory range and will compensate Plaintiff for the lost sales and lost goodwill to

BAGILAANOE, as well as for the efforts into investigating and prosecuting counterfeit actions. This award will also serve as deterrence to any future counterfeiting on behalf of Defaulting Defendants and serve the enumerated goals of 15 U.S.C. § 1117(c). Joint Statement of Trademark Counterfeiting Legislation, H.R.J. Res. 648, 98th Cong., 2nd Sess., 130 Cong.Rec. H12076, H12083; *PetMed Express, Inc.*, 336 F. Supp. 2d at 1222 ("statutory damages under § 1117(c) are intended not just for compensation for losses, but also to punish and deter wrongful conduct.").

>        **D.        Plaintiff's Damages as to Count II for False Designation of Origin**

Plaintiff's Complaint sets forth a cause of action for false designation under §43(a) of the Lanham Act (15 U.S.C. §1125(a))(Count II). Thus, 15 U.S.C. §1117(c) provides the scope of monetary damages.

For the foregoing reasons, Plaintiff respectfully requests for this Court to enter final default judgment and a permanent injunction against Defendants consistent with the proposed order on Plaintiff's Motion for Final Default Judgment and Permanent Injunction submitted herewith.

Respectfully Submitted this 17th day of November, 2022,

*/s/ Lydia Pittaway*
Attorney and Counselor at Law
Fla. Bar No.: 0044790
Of Counsel, Ford Banister IP
305 Broadway - Floor 7
New York NY 10007
Telephone: +1 212-500-3268
lpittaway@fordbanister.com
*Attorney for Plaintiff*
