UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 22-CV-22363-SCOLA/GOODMAN

SHENZHEN DEJIAYUN NETWORK
TECHNOLOGY CO., LTD.,

      Plaintiff,

v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

      Defendants.

_____/

REPORT AND RECOMMENDATIONS ON PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT AGAINST *CERTAIN*[1] DEFENDANTS

      In this trademark infringement action, Shenzhen Dejiayun Network Technology

Co., Ltd. ("Dejiayun" or "Plaintiff") filed a motion for default judgment against some (but

---

[1]      At the hearing, Plaintiff advised the Court that it was moving for default judgment against all defendants listed in Schedule A, *except* # 7 Guanghou Miaohuangqiu Trading Co., # 9 Hejing, # 13 La Foreoreuse de Pointe, # 17 Toamir, and # 20 Xingmian because, as to those companies, there had been either a motion for consent judgment or a notice of voluntary dismissal. Therefore, there is no danger of inconsistent judgments because the excepted defendants have either been voluntarily dismissed or have agreed to consent judgments and the only motion pending before this Court is the instant motion for default judgment against the remaining Defendants.

not all) defaulted defendants (collectively, "Defendants").[2] [ECF No. 50]. Defendants have not filed a response to Plaintiff's motion (or otherwise participated in this lawsuit), and the response deadline has now expired.

United States District Judge Robert N. Scola, Jr. referred this motion to the Undersigned "for either an order or a report and recommendations, consistent with 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of the Local Magistrate Judge Rules." [ECF No. 56]. As explained below, the Undersigned **respectfully recommends** that the Motion be **granted in part and denied in part**.

## I.    Background

Plaintiff filed a two-count complaint alleging trademark infringement and counterfeiting pursuant to section 32 of the Lanham Act, 15 U.S.C. §1114, (Count I) and false designation of origin pursuant to section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (Count II). [ECF No. 1]. The Complaint alleges that Defendants are selling, offering for sale, and marketing counterfeit products using Plaintiff's BAGILAANOE trademark registered with the United States Patent and Trademark Office, Reg. No. 5,745,285 (hereinafter, "BAGILAANOE Mark" or "Mark") within the Southern District of Florida by operating internet-based e-commerce stores. *Id.* at ¶¶ 3-5, 8, 15-16, 20, 28-35.

---

[2]     In this Report and Recommendations, the term "Defendants" will refer to only those defendants who are the subject of Plaintiff's default judgment motion.

Dejiayun's Complaint further asserts that Defendants' unlawful activities have caused, and will continue to cause, irreparable injury to Plaintiff: "through consumer confusion, dilution, and tarnishment of its valuable BAGILAANOE Mark." *Id.* at ¶ 4.[3]

Plaintiff moved for and obtained a Clerk's Default against Defendants. [ECF Nos. 48-49]. Plaintiff now seeks the entry of a default judgment in its favor and against Defendants, statutory damages, and the entry of a permanent injunction. [ECF No. 50].

The Undersigned set this matter for an evidentiary hearing. [ECF No. 64]. After the original hearing date was rescheduled at Plaintiff's counsel's request, the Undersigned held a hearing (albeit not an *evidentiary* hearing) on June 22, 2023. [ECF No. 72]. Despite four separate Orders[4] identifying the nature of this hearing as an *evidentiary*

---

[3]    *See also* [ECF No. 1, ¶ 26 ("Defendants' unauthorized use of the BAGILAANOE [Mark] in connection with the advertising, distribution, offering for sale, and sale of Infringing Products, including the sale of Infringing Products into the United States, including Florida, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff."); *id.* at ¶ 35 ("Defendants' use of the BAGILAANOE [Mark] in connection with the advertising, distribution, offering for sale, and sale of counterfeit products, including the sale of counterfeit and infringing BAGILAANOE products into Florida, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff."); *id.* at ¶ 42 ("Plaintiff has no adequate remedy at law, and if Defendants' actions are not preliminarily or permanently enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its BAGILAANOE [Mark].").

[4]    [ECF Nos. 64; 66; 70; 71].

3

hearing (including one Order[5] requiring a "federal court-certified interpreter"), Plaintiff's counsel did not bring *any* witnesses to the hearing.

At the hearing, Plaintiff's counsel told the Undersigned that she (after consulting with a colleague at her firm) interpreted the Undersigned's Order denying her motion requesting permission for the telephonic appearance of a witness [ECF No. 70] to mean that the Court was not expecting *any* witnesses at the June 22, 2023 hearing.

The Undersigned finds Plaintiff's interpretation -- that no live witness testimony was expected at an evidentiary hearing -- to be astounding and fundamentally illogical. To begin with, there is *nothing* which can be gleaned from the text of the one-sentence Order [ECF No. 70][6] denying Plaintiff's motion which supports Plaintiff's interpretation. Moreover, there are no less than *four* references on the docket to an in-person *evidentiary* hearing. [ECF Nos. 64; 66; 70-71]. Finally, on the same day the Undersigned denied Plaintiff's witness's telephonic appearance request, the Undersigned issued an Order stating, in part: "Any party calling a witness who needs an interpreter will need to make their own arrangements for retaining a federal court-certified interpreter." [ECF No. 71].

---

[5]      [ECF No. 71].

[6]      The one-sentence Order states in its entirety: "PAPERLESS ORDER denying [69] MOTION for Leave to Appear Telephonically at **evidentiary** hearing on Plaintiff's Motion for Entry of Final Judgment set for Thursday, June 22, 2023 at 10:00 AM." [ECF No. 70 (emphasis added)].

It would be mighty odd for the Undersigned to issue that Order if no live testimony was anticipated at the *evidentiary* hearing.

Plaintiff did not move to transform the hearing into a non-evidentiary hearing, nor did it ask that no hearing occur because the Court could rely on the declaration and exhibits already filed on CM/ECF. Instead, its counsel appeared at the evidentiary hearing and proclaimed that she would be relying on the declaration (which the Undersigned had previously reviewed and could read again, if necessary).

Nonetheless, "an evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages." *CreeLED, Inc. v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule A*, No. 23-CV-20163, 2023 WL 2915853, at *6 (S.D. Fla. Apr. 12, 2023). Here, there is a sufficient basis to ascertain damages through Plaintiff's written submissions. For this reason (and notwithstanding Plaintiff's non-compliance with the Order scheduling an evidentiary hearing), the Undersigned will recommend that the District Court **grant in part and deny in part** Dejiayun's motion in accordance with this Report and Recommendations.

## II.    Applicable Legal Standard

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A

party may then apply to the District Court for a default final judgment. Fed. R. Civ. P. 55(b)(2); *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166, 1173 (M.D. Ala. 2008).

A court may not enter a default final judgment based solely on the existence of a clerk's default. *Id.* at 1174. Instead, a court is required to examine the allegations to see if they are well-pleaded and present a sufficient basis to support a default judgment on the causes of action. *Id.* (citing *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[7] Only those factual allegations that are well-pleaded are admitted in a default judgment. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

The decision whether to enter a default judgment "is committed to the discretion of the district court." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1576 (11th Cir. 1985). Default judgments are "generally disfavored" because this Circuit has a "strong policy of determining cases on their merits." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–45 (11th Cir. 2015). In addition to assessing whether the complaint adequately sets forth facts to support the plaintiff's claims, a court considering the entry of a valid default judgment must "have subject-matter jurisdiction over the claims and have personal jurisdiction over the defendant." *Osborn v. Whites & Assocs. Inc.*, No. 1:20-cv-02528, 2021

---

[7]     In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

WL 3493164, at *2 (N.D. Ga. May 20, 2021) (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558

F.3d 1210, 1215 & n.13 (11th Cir. 2009)).

A court may conduct a hearing on a motion for default judgment when, in order

"to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine

the amount of damages; (C) establish the truth of any allegation by evidence; or (D)

investigate any other matter." Fed. R. Civ. P. 55(b)(2); *see also Tara Prods., Inc. v. Hollywood*

*Gadgets, Inc.*, 449 F. App'x 908, 911-12 (11th Cir. 2011) (noting that Rule 55(b)(2) "leaves

the decision to hold an evidentiary hearing to the court's discretion").

## III.    Analysis

"[B]efore entering a default judgment, the Court must ensure that it has

jurisdiction over the claims and there must be a sufficient basis in the pleadings for the

judgment entered." *Tissone v. Osco Food Servs., LLC*, No. 19-CV-61358, 2021 WL 1529915,

at *2 (S.D. Fla. Feb. 10, 2021), report and recommendation adopted, No. 19-61358-CIV,

2021 WL 870526 (S.D. Fla. Mar. 9, 2021) (citing *Nishimatsu*, 515 F.2d at 1206).

### a.    Subject-Matter Jurisdiction

The Complaint alleges causes of action under the Lanham Act. Therefore, the

Court has original subject matter jurisdiction over the instant action. *See Ethos Grp., Inc.*

*v. JAB Media, LLC*, No. 3:22-CV-485-TJC-LLL, 2023 WL 4187097, at *2 (M.D. Fla. May 25,

2023), report and recommendation adopted, No. 3:22-CV-485-TJC-LLL, 2023 WL 4181070

(M.D. Fla. June 26, 2023) ("Because this action arises under the Lanham Act, the Court has original subject-matter jurisdiction." (record citation omitted)).

### b.     Personal Jurisdiction

In addition to subject matter jurisdiction, a court must also have personal jurisdiction over each defendant. "A judgment rendered in the absence of personal jurisdiction is void and without legal effect." *Strange v. Nescio*, No. 20-80947-CV, 2021 WL 8945480, at *1 (S.D. Fla. Mar. 29, 2021) (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012)). For this reason, "when deciding a motion for default judgment, a court has an affirmative duty to evaluate whether it has personal jurisdiction over the defendant and may raise the issue *sua sponte*." *Id.*

"The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010) (citation omitted).

### i.     Service of Process

Service of process is a jurisdictional requirement. "Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is

void." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). "[W]ithout

proper service of process, the district court ha[s] no power to enter a default judgment

against the [defendant]." *Albert v. Discover Bank*, No. 21-12011, 2022 WL 1184405, at *1

(11th Cir. Apr. 21, 2022).

Here, Plaintiff filed a motion seeking authorization for electronic service of process

pursuant to Federal Rule of Civil Procedure 4(f)(3), which the Court granted. [ECF Nos.

20; 22].

The Court authorized Plaintiff to serve Defendants as follows:

Dejiayun may . . . serve the summonses, complaint, and all other filings and
discovery in this matter upon each Defendant by:

1. sending emails to each Defendant via the e-mail accounts provided by
each Defendant as part of the data related to its e-commerce store, including
customer service e-mail addresses and onsite contact forms, or by the e-
commerce platform e-mail for each of the e-commerce stores, and in the
email providing the address to Dejiayun's designated website to the
Defendants; and

2. publicly posting a copy of the summonses, complaint, and all filings in
this matter on Dejiayun's designated website found at
https://fordbanister.com/case-no-22-cv-22363-rns-shenzhen-dejiayun/.

[ECF No. 22, p. 3].

The Court's Order further stated that:

The combination of providing notice via electronic publication or e-mail,
along with any notice that the Defendants receive from any Third Party
Providers, including PayPal, Payoneer, Hyperwallet and Walmart, Inc. will
constitute notice reasonably calculated under all circumstances to apprise

the Defendants of the pendency of the action and afford them the opportunity to respond.

*Id.* at 4.

Thereafter, Plaintiff filed a proof of service indicating that Defendants had been served via e-mail service and via website posting:

> I certify that per this Court's [O]rder on Sept. 16, 2022 (D.E. 22), I sent an email with a link to https://fordbanister.com/case-no-22-cv-22363-rns-shenzhen-dejiayun/ by email to the email addresses contained in Schedule A (D.E. 18-3) and any email address provided for Defendants by third parties with: Summons (D.E. 33); Complaint (D.E. 1), Schedule "A" (D.E. 18-3) on Oct. 15, 2022.

[ECF No. 43].

Because Plaintiff complied with Judge Scola's Order [ECF No. 22] authorizing alternative service of process over Defendants, Plaintiff has effectuated service of process on Defendants in the instant case. *See Leading Edge Mktg. Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-23480-CIV, 2022 WL 16756952, at *2 (S.D. Fla. Nov. 7, 2022), report and recommendation adopted, No. 21-23480-CIV, 2022 WL 17144227 (S.D. Fla. Nov. 22, 2022) (finding defendants have been "properly served . . .with the [c]omplaint and summonses via email and Internet publication, consistent with the Court's Order Authorizing Alternate Service"); *Ain Jeem, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 8:21-CV-1261-VMC-JSS, 2022 WL 2306858, at *2 (M.D. Fla. Jan. 27, 2022), report and recommendation adopted sub nom.

*Ain Jeem, Inc. v. Individuals*, No. 8:21-CV-1261-VMC-JSS, 2022 WL 2306874 (M.D. Fla. Feb. 15, 2022) (finding that "[the] [p]laintiff [had] properly effected service on [the] [d]efendants pursuant to Federal Rule of Civil Procedure 4(f)(3)" by complying with the court's order authorizing alternate service of process).

### ii.        Amenability to Jurisdiction

The Complaint alleges "on information and belief, [that] Defendants are individuals and business entities who reside in the People's Republic of China or other foreign jurisdictions." [ECF No. 1, ¶ 15]. "The plaintiff has the burden of establishing a *prima facie case* of personal jurisdiction over a nonresident defendant." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *see also Warner Bros. Ent. Inc. v. Phillips*, No. 6:14-CV-1294-ORL-37, 2015 WL 4590519, at *3 (M.D. Fla. July 28, 2015) ("Even in the default judgment context, as a threshold matter, the plaintiff bears the burden of pleading sufficient facts to make out a *prima facie* case of personal jurisdiction over non-resident defendants.").

In *Leading Edge Mktg., Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, this Court determined that it had "personal jurisdiction over the

[d]efendants" because they had been served in accordance with the "Court's order

authorizing alternative service" and:

> [the] [d]efendants directly target their business activities toward consumers in the United States, including Florida, and . . . [were] reaching out to do business with Florida residents by operating one or more commercial, interactive internet stores on internet marketplaces where Florida residents [could] purchase products bearing infringing and/or counterfeit trademarks belonging to the Plaintiff.

No. 23-CV-21333, 2023 WL 3392684, at *2 (S.D. Fla. May 10, 2023).

> Similarly here, the Complaint alleges that:

> Defendants directly targets business activities toward consumers in the United States, including Florida, through at least the fully interactive, commercial Internet stores operating under the Defendant Names/ Aliases in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants reach out to do business with Florida residents by operating one or more commercial, interactive Defendant Internet Stores through which Florida residents can purchase products bearing infringing versions of Plaintiff's federally registered BAGILAANOE [Mark]. Each of the Defendants has targeted sales from Florida residents by operating online stores that offer shipping to the United States, including Florida, accept payment in U.S. dollars and, on information and belief, has sold products that infringe Plaintiff's federally registered trademark. Each of the Defendants is committing tortious acts in Florida, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Florida.

[ECF No. 1, ¶ 2].

Because "a defaulted defendant is deemed to have admitted the movant's well-pleaded allegations of fact,"[8] these established facts provide a basis for this Court's personal jurisdiction over Defendants. *See TWOWS, LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 823CV00139WFJMRM, 2023 WL 2837693, at *2 (M.D. Fla. Apr. 7, 2023) ("[The] [p]laintiff has demonstrated a *prima facie* showing that this Court has specific personal jurisdiction over the [d]efendants. [The] [d]efendants, alleged to be residing or operating in outside the United States, and are alleged to have committed a tortious act within the state of Florida in satisfaction of Fla. Stat. § 48.193(1)(b).").[9]

In sum, Plaintiff has demonstrated that this Court has both subject-matter and personal jurisdiction over Defendants.

---

[8]     *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1339 (11th Cir. 2014).

[9]     *See also, Lead Creation Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 8:23-CV-49-CEH-CPT, 2023 WL 1993971, at *2 (M.D. Fla. Feb. 14, 2023) ("[The] [p]laintiff has demonstrated a *prima facie* showing that this Court has personal jurisdiction over the [d]efendants, who are alleged to be residing or operating in the People's Republic of China, because the [d]efendants directly target their business activities toward consumers in the United States, including Florida. Specifically, [the] [p]laintiff has provided a basis to conclude that [the] [d]efendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers using one or more [s]eller [a]liases, offer shipping to the United States, including Florida, accept payment in U.S. dollars and have sold the same product that infringes directly and/or indirectly [the] [p]laintiff's patent-in-suit to residents of Florida.").

### c.    Liability

As noted above, the Complaint alleges trademark infringement and counterfeiting (Count I) and false designation of origin (Count II), pursuant to sections 32 and 43 of the Lanham Act, respectively. [ECF No. 1].

"[T]he elements of a claim for trademark infringement occur[ ] when a person 'use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' which 'is likely to cause confusion, or to cause mistake, or to deceive.'" *Chanel, Inc. v. Reznik*, No. 07-60493-CIV, 2007 WL 9710719, at *2 (S.D. Fla. Nov. 21, 2007) (quoting *Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999)). Thus, to prevail on Count I, Plaintiff must show "(1) that its mark has priority and (2) that [ ] [D]efendant['s] mark is likely to cause consumer confusion." *Id.*

Dejiayun has sufficiently alleged and established each of these elements: (1) Plaintiff's ownership of the BAGILAANOE Mark preceded Defendants' infringement; (2) Defendants are selling, offering for sale, and marketing products with the BAGILAANOE Mark without Plaintiffs' consent or authorization; and (3) the marks used on the products Defendants are selling, offering for sale, and marketing are similar to the Plaintiff's BAGILAANOE Mark that they are likely to cause consumer confusion. [ECF No. 1, ¶¶ 7-8, 12, 15, 19, 34, 37-40, and 44-46]. Accordingly, Plaintiff is entitled to a default judgment on its trademark counterfeiting and infringement claim (Count I).

14

"The elements of a claim for false designation of origin are: '(1) that the plaintiff had enforceable trademark rights in the mark or name[ ] and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two.'" *Volkswagen Grp. of Am., Inc. v. Varona*, No. 19-24838-CIV, 2021 WL 247872, at *11 (S.D. Fla. Jan. 25, 2021) (quoting *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1299 (S.D. Fla. 2017)).

The test for liability for false designation of origin is the same as for trademark infringement and counterfeiting, whether the public is likely to be deceived or confused by the similarity of the subject marks. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992). As already noted, Plaintiff's well-pled allegations establish its ownership of the BAGILAANOE Mark and there is a likelihood of consumer confusion due to Defendants' use of the BAGILAANOE Mark. [ECF No. 1, ¶¶ 7-8, 12, 15, 19, 34, 37-40, and 44-46]. Thus, Plaintiff is entitled to a default judgment on its false designation of origin claim (Count II).

Here, the well-pled allegations in the Complaint, deemed admitted by virtue of Defendants' default,[10] establish Defendants' liability for each of the claims asserted. Moreover, the Complaint's factual allegations have been substantiated by the sworn, supplemental declaration of Deng Jialiang, Plaintiff's legal representative. [ECF No. 18-

---

[10]    *Perez*, 774 F.3d at 1339.

1]. Therefore, Plaintiff has shown that Defendants are liable for trademark infringement and counterfeiting under section 32 of the Lanham Act and false designation of origin under section 43.

### d.  Damages

"Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages." *Gov't Emps. Ins. Co. v. Compass Med. Centers Inc.*, No. 21-CV-23623, 2022 WL 17653816, at *2 (S.D. Fla. Nov. 10, 2022), report and recommendation adopted, No. 21-23623-CIV, 2022 WL 17602650 (S.D. Fla. Dec. 13, 2022). Even in the default judgment context, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2688 at 58–59 (3d ed.1998)).

Here, Plaintiff seeks monetary damages and equitable relief. As discussed below, Plaintiff is entitled to the relief requested.

16

i.  **Statutory Damages**

The Lanham Act provides multiple remedies for violations of trademark law. In addition to injunctive relief, discussed *infra*, the Lanham Act permits a successful plaintiff "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The Lanham Act also allows for the court-ordered turnover of counterfeit items in a defendant's possession. 15 U.S.C. § 1118.

In certain instances, the Lanham Act provides for the recovery of statutory damages:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—
>
> > (1) **not less than $1,000 or more than $200,000 per counterfeit mark** per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
> >
> > (2) **if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark** per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c) (emphasis added).

"The Court has wide discretion to determine the amount of statutory damages." *Animacord Ltd. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No.

21-CV-20744, 2022 WL 1109849, at *5 (S.D. Fla. Mar. 24, 2022), report and recommendation adopted sub nom. *Animaccord Ltd. v. Individuals, P'ships, or Unincorporated Ass'ns Identified on Schedule A*, No. 21-20744-CIV, 2022 WL 1102865 (S.D. Fla. Apr. 13, 2022) (citing *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1219 (S.D. Fla. 2004)). The Court may award statutory damages even in instances where a plaintiff cannot prove actual damages caused by a defendant's infringement. *See ABS-CBN Corp. v. abscbn-teleserye.com*, No. 17-61051-CIV, 2017 WL 6947726, at *8 (S.D. Fla. Dec. 27, 2017) (noting that "[a]n award of statutory damages is appropriate, because statutory damages may be elected whether or not there is adequate evidence of the actual damages suffered by [the] plaintiff or of the profits reaped by the [d]efendant").

The amount of statutory damages awarded should be sufficient to compensate the trademark owner *and* deter the defendant and others from infringing on that trademark. *See Green Apple Juice Bar, LLC v. Bay Parc Plaza Mkt., LLC*, No. 22-23295-CIV, 2023 WL 3980245, at *7 (S.D. Fla. May 19, 2023), report and recommendation adopted, No. 22-23295-CV, 2023 WL 3971175 (S.D. Fla. June 13, 2023) ("Statutory damages should serve the dual purposes of compensating the plaintiff and sanctioning and deterring infringers." (citing *PetMed Express*, 336 F. Supp. 2d at 1220-21)).

Here, Plaintiff asks for a "statutory award of damages in the amount of $200,000 against each . . . Defendant." [ECF No. 50, pp. 11, 13]. In support of this request, Plaintiff

18

filed a post-hearing notice [ECF No. 74], citing three recent Orders where courts, including this Court, have awarded statutory damages to Plaintiff: *Shenzhen Dejiayun Network Tech. Co., Ltd. v. The P'ships and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 22-cv-62060, ECF No. 97 (S.D. Fla., Apr. 20, 2023) (Cohn, J.) (awarding $180,000 per defaulted defendant) ("Judge Cohn case"); *Shenzhen Dejiayun Network Tech. Co., Ltd. v. The P'ships and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 22-cv-2846 (N.D. Ill., Aug. 3, 2022) (awarding $200,000 per defaulted defendant); *Shenzhen Dejiayun Network Tech. Co., Ltd. v. The P'ships and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 1:21-cv-4249 (N.D. Ill. Nov. 16, 2021) (same).

In the Judge Cohn case, as in the instant case, Plaintiff sought a statutory award of $200,000 per defaulted defendant. [ECF No. 97 in Case No. 22-cv-62060-JIC, p. 2 ("Plaintiff seeks $200,000 in statutory damages from each of the eleven defaulting Defendants, totaling $2,200,000.")]. Instead of the requested amount, Judge Cohn awarded Plaintiff $180,000 per defaulted defendant.

Judge Cohn explained that:

> Plaintiff's request for statutory damages totaling $2,200,000 ($200,000 against each of the eleven defaulting Defendants) for willful infringement of its single trademark **exceeds the $2,000,000 statutory limit** for such damages. See 15 U.S.C. § 1117(c)(2) ("[I]f the court finds that the use of the counterfeit mark was willful, [it may award] not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.").

19

*Id.* at 4.

> For this reason, Judge Cohn:
>
> conclude[d] that a statutory damage award of $180,000 against each of the eleven defaulting Defendants (totaling $1,980,000) accords with statutory damages awarded in similar cases. *See Luxottica Group S.p.A. v. President Optical Inc.*, No. 20-CV-20340, 2020 WL 6115100, at *4 (S.D. Fla. May 20, 2020) (collecting cases awarding approximately $180,000 in statutory damages per trademark, totaling no more than $2,000,000).

*Id.* (emphasis added).

Similarly here, the deemed-admitted allegations of the Complaint and Plaintiff's other submissions establish Defendants' willful infringement of a single mark.[11] Plaintiff's Scheduled "A" [ECF No. 50-3] lists 20 entities. However, at the evidentiary hearing, Plaintiff's counsel represented to the Court that of the 20 entities listed in Schedule "A", Plaintiff was not seeking a default judgment against five of those entities. *See* footnote 1, *supra*. Therefore, there are 15 Defendants (20 minus 5) against whom Plaintiff seeks statutory damages of $200,000 per Defendant, for a total of $3,000,000.

---

[11]     *See* Complaint [ECF No. 1, ¶ 3 ("This action has been filed by Plaintiff to combat online e-commerce store operators who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's **BAGILAANOE trademark,** which is covered by U.S. Trademark Registration No. 5,745,285 ("BAGILAANOE") for use with goods in Class 25, registered on May 7, 2019. The BAGILAANOE Registration is valid, subsisting, and in full force and effect." (emphasis added))].

The Undersigned respectfully **recommends** that the Court award Plaintiff $125,000 per Defendant, for a total award of **$1,875,000** (15 times $125,000). This recommended statutory award will be sufficient to compensate Plaintiff, punish Defendants, and deter them and others from continuing to counterfeit or otherwise infringe Plaintiff's trademark, consistent with the purpose of 15 U.S.C. § 1117(c). *See Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1263 (S.D. Fla. 2016) (awarding $100,000 in statutory damages per Defendant in willful infringement case).

###           ii.           Injunctive Relief

Plaintiff also seeks the issuance of a permanent injunction. [ECF No. 50, pp. 6-8]. The Lanham Act authorizes the Court to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office[.]" 15 U.S.C. § 1116(a). Generally, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (citation omitted). Moreover, injunctive relief is available even in the default judgment setting[ ] because [the] [d]efendants' failure to respond or otherwise appear makes it difficult for a plaintiff to prevent further infringement absent an injunction." *Animacord Ltd.*, 2022 WL 1109849, at *4 (internal citation omitted).

21

To obtain a permanent injunction, Plaintiff must show: (1) irreparable injury; (2) an inadequate remedy at law; (3) that the balance of hardships between weight in favor of issuing an injunction; and (4) the issuance of an injunction would not disserve that the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006).

All four factors are met here. Plaintiff has shown that Defendants offer to sell, advertise, market and display the BAGILAANOE Mark on their e-commerce stores to sell counterfeit products. Therefore, consumers will continue to be confused by Defendants' unauthorized use of the BAGILAANOE Mark. Additionally, so long as Defendants continue their infringing and counterfeiting activities, Plaintiff loses its ability to control its Mark and will continue to suffer irreparable harm to its reputation and goodwill. *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & CO's business reputation and decrease its legitimate sales."); *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005) (noting that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. Irreparable injury can also be based upon the possibility of confusion." (citation omitted)).

Plaintiff has also shown no adequate remedy at law because monetary damages alone will not redress the harm to Plaintiff from Defendant's infringement. *See Chanel,*

*Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1290 (S.D. Fla. 2016) ("[The] [p]laintiff has no

adequate remedy at law so long as [the] [d]efendants continue to operate the [s]ubject

[d]omain [n]ames and [s]eller IDs because [the] [p]laintiff cannot control the quality of

what appears to be its products in the marketplace. An award of money damages alone

will not cure the injury to [the] [p]laintiff's reputation and goodwill that will result if [the]

[d]efendants' infringing and counterfeiting actions are allowed to continue." (record

citation omitted)).

The balance of harms also weighs in favor of issuing a permanent injunction.

Plaintiff's injury without an injunction outweighs the impact an injunction would have

on Defendants. *See Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1264 (S.D. Fla.

2019) (finding that the balance of harms favored the issuance of a permanent injunction

where "[the] [p]laintiff face[d] hardship from loss of sales and its inability to control its

reputation in the marketplace," whereas "[the] [d]efendants face[d] no hardship if they

[were] prohibited from the infringement of [the] [p]laintiff's trademarks, which is an

illegal act.").

Lastly, the public interest will not be disserved if the Court were to enjoin

Defendants. "[T]he public interest is served by preventing consumer confusion in the

marketplace." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001)

(citing *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir.

1996)); [12] *Mantua Mfg. Co. v. Irize Mattress, Inc.*, No. 20-25036-CIV, 2021 WL 3375837, at *5 (S.D. Fla. Feb. 24, 2021) ("The public interest is served by the entry of a permanent injunction in that further confusion and mistake by the public will be prevented.").

In sum, Plaintiff has shown entitlement to permanent injunctive relief. Therefore, the Undersigned respectfully **recommends** that the Court enter permanent injunctive relief consistent with the terms listed in paragraph 2 of Plaintiff's proposed final default judgment and permanent injunction [ECF No. 50-3, pp. 2-3], as to those 15 Defendants who are the subject of Plaintiff's motion.

## IV.    Conclusion

For the reasons stated above, the Court should **grant in part and deny in part** Plaintiff's motion, award $125,000 in statutory damages per Defendant (totaling $1,875,000), and issue a permanent injunction against Defendants.

Plaintiff will provide a copy of this Report and Recommendations to those Defendants who are the subject of its motion in the same manner in which the Court authorized alternative service of process on Defendants. [ECF No. 22]. Plaintiff will file a notice of compliance on CM/ECF by no later than **Monday, July 10, 2023**.

---

[12]    Although *Davidoff & CIE, S.A.* concerned the entry of a preliminary injunction and the instant motion seeks the issuance of a permanent injunction, "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987).

V.       **Objections**

The parties will have fourteen (14) days from the date of being served with a copy

of this Report and Recommendations within which to file written objections, if any, with

United States District Judge Robert N. Scola, Jr. Each party may file a response to the

other party's objection within fourteen (14) days of the objection. Failure to file objections

timely shall bar the parties from a *de novo* determination by the District Judge of an issue

covered in the Report and shall bar the parties from attacking on appeal unobjected-to

factual and legal conclusions contained in this Report except upon grounds of plain error

if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140,

149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on July 1,

2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record